[No. 6,610.—Department No. 2.]

HELEN W. MOORE v. THOMAS W. MOORE ET AL.

56   89
81  195
56   89
112  446

COMPLAINT — FRAUD — STATUTE OF LIMITATIONS — PLEADING — DEMURRER.—In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice. *Held*, accordingly, in an action to set aside a deed of real estate on the ground of fraud, where a demurrer had been interposed to the complaint, that the allegation quoted in the opinion was a sufficient allegation that the plaintiff did not discover the facts constituting the fraud until within three years next preceding the commencement of the action.

FRAUD — MENTAL WEAKNESS — INADEQUACY OF CONSIDERATION—RESCISSION. Wherever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, imposition or undue influence will be inferred, and a court of equity will, upon proper and reasonable application of the injured party, interfere and set the conveyance aside.

APPEAL from a judgment for the defendants, in the Twentieth District Court, County of Santa Cruz. BELDEN, J.

*Charles B. Younger*, and *F. B. McCann*, for Appellant.

Plaintiff's condition of mind, at the time she executed these conveyances, was such that she was not competent to protect herself; she was ignorant of her rights in the estate left by her husband, and of the value thereof, and she was surprised in matters of fact, as well as of law. (Civ. Code, § 1588, subd. 1; Story Eq. Jur. §§ 118, 123, 251; *Wheeler* v. *Smith*, 9 How. 55.) The conveyances were "inequitable and unconscientious," and such as Lord Hardwicke declared, "no man in his senses and not under delusion, would make on the one hand, and no honest and fair man would accept on the other." That inadequacy of consideration may be so gross as to be grounds for canceling a deed, is well established. (Story Eq. Jur. § 246; Hilliard on Vendors, 354; *Dunn* v. *Chambers*, 4 Barb. 376; *Hall* v. *Perkins*, 3 Wend. 627.) The deeds were obtained by undue influence, and should be set aside. (Civ. Code, § 1575; Story Eq. Jur. §§ 222 and 307; *Taylor* v. *Taylor*, 8 How. 200; *Allore* v. *Jewell*, 94 U. S. 506; Vol. 2, Pt. 1, Leading Cases in Equity, 462, 473, 474, 486.)

*John C. Hall*, for Respondent.

Fraud is never presumed. (*McCarthy* v. *White*, 21 Cal. 495.) The complaint contains no allegations of any *facts* constituting fraud. (*Kent* v. *Snyder*, 30 Cal. 674; *Semple* v. *Hagan*, 27 id. 166.) The plaintiff had the opportunity to read the deeds, and was not prevented. (*Hawkins* v. *Hawkins*, 50 Cal. 558; *Jackson* v. *Croy*, 12 Johns. 426; *Greenfield's Estate*, 14 Penn. St. 489; *Boyd* v. *Blankman*, 29 Cal. 43; *Board of Commissioners* v. *Younger*, 29 id. 176.) It is not alleged that the weakness of this plaintiff was taken advantage of. The action is barred by the Statute of Limitations. (Code Civ. Proc. §§ 318, 319, 338.) There is no allegation that the plaintiff did not discover the facts constituting the fraud, until within three years prior to the commencement of the action. (*Sublette* v. *Tinney*, 9 Cal. 423; *City of Oakland* v. *Carpentier*, 13 Cal. 553.)

Sharpstein, J.:

The Court below sustained a demurrer to the plaintiff's complaint on two grounds, viz.: That the alleged cause of action is barred by the Statute of Limitations, and that the complaint does not state facts sufficient to constitute a cause of action.

The action is for relief on the ground of fraud or mistake, and was commenced more than three years after the acts, upon which the plaintiff relies for relief, were committed. She alleges that she was induced to execute certain deeds of conveyance and a bill of sale without consideration, by undue influence or imposition, and that she " did not know, understand, comprehend, learn, or discover the contents of said instruments, or the purpose, effect, or meaning thereof, of any of them, at any time prior to the —— day of October, 1877," which was within the three years next preceding the commencement of this action. The statute gave her three years from and after her discovery of the facts constituting the alleged fraud or mistake, within which to commence an action for redress. So long as she was ignorant of the contents of the instruments which she had been induced to execute, she was ignorant of the facts constituting the fraud or mistake upon which she relies for relief.

Under the rule that, " in the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice, (Code Civ.

Proc. § 452) we think that this allegation should be held to be substantially one that the plaintiff did not discover the facts constituting the fraud or mistake, of which she complains, until three years next preceding the commencement of this action.

The plaintiff's cause of action, as stated in her complaint, is substantially as follows: On the 13th of July, 1871, she was married to one William H. Moore, with whom she lived and cohabited as his wife, until the 30th of October, 1871, when he was suddenly killed by being shot. At the time of his death she was pregnant with a child, to whom she gave birth within four months afterwards.

It is not alleged that insanity, or even temporary aberration of mind, resulted from the shock produced by her husband's death; but that it caused great prostration of mind and body, and unfitted her for the transaction of business; and that, on the second day after the burial of her deceased husband, and before she had recovered from the shock which his death had occasioned, she was waited upon by two brothers and two brothers-in-law of her late husband, who were accompanied by an attorney and notary. They presented to her and requested her to sign the instruments which she now seeks to avoid. She was told by one of the brothers of her late husband, that it was his wish that she should sign them; and thereupon, without reading or knowing the contents of them, and without any negotiation as to the price to be paid, or any agreement or understanding in relation to any consideration for her doing so, she signed three instruments, by which she transferred to the surviving children of her late husband her entire interest in his estate. Previous to their marriage, he had made a will by which he gave all, or nearly all, of his property to those children. That will was revoked by his subsequent marriage.

Perhaps the statement that the deceased desired to have the plaintiff execute the instruments presented to her was based upon the provisions of that will.

The salient points of the complaint, as we construe it, are, that there was no consideration for the transfer by the plaintiff of her entire interest in her late husband's estate, which is alleged to have been of the value of about $47,000, at the time of his death.

The transfer was made without negotiation, explanation, or any conceivable adequate motive.

The time selected for the transaction, in view of her then recent bereavement, and the shock which such an event would naturally inflict upon her, was, at least, malapropos.

She alleges that she was suffering at the time from the effects of the shock which she had sustained by her late husband's death.

She also alleges that she did not read and was not informed of the contents of the instruments which she signed.

For the purpose of determining whether the demurrer to the complaint was properly sustained, we must assume that all of the plaintiff's allegations are true. And then the question arises, whether the apparent consent of the plaintiff to the transfer of her property was obtained through undue influence. Was an unfair advantage taken of her weakness of mind? There are other grounds upon which the contracts may be rescinded; but the alleged facts of this case, as we view them, utterly fail to present any other ground upon which the relief prayed for could be granted.

A consideration was not necessary to the validity of the transfer. If it was voluntary, that is sufficient. But the fact of there being no consideration, or a grossly inadequate one, is a circumstance which may be considered in determining the condition of the plaintiff's mind at the time of her signing the deeds. She signed instruments which transferred her entire estate, and thereby reduced herself to a state of destitution. The fact of her having done so without consideration, or any apparent motive, would indicate great weakness or unsoundness of mind. One of the *indicia* of a weak or disordered mind is that its possessor is quite liable to act against his own plain interest in cases where the act could not be imputed to mistake.

It is true, that the shrewdest of men make mistakes; but it is only those of weak or unsound mind who transfer all their property to others, without any consideration or motive, real or apparent.

The plaintiff alleges that she was suffering under great mental and physical prostration when applied to to sign these deeds. It was but natural that she should be greatly depressed and de-

jected at that time.    It was the second day after her late hus-
band's funeral.    It was at a time when she would naturally
feel averse to transacting any business, and she might reason-
ably presume that her late husband's brothers would not apply
to her at such a time to transact any important business, unless
it was of a nature that would admit of no delay.    And as it
would admit of delay, the only reason which we can discover for
their unseemly haste is, that they thought that she would be more
likely to comply with their wishes then than at some future
time, after she had recovered from the shock which she had
then so recently experienced.    If for that reason they selected
that time for the accomplishment of their purpose, it seems to
us that they not only took, but that they designed to take, an
unfair advantage of her weakness of mind.    If they did not,
they probably can explain why they selected that inappropriate
time for the  transaction of business which might have been de-
layed for  weeks without injury to any one.    In the absence of
any explanation, it appears to us that the time was selected with
reference to just that condition of mind which she alleges that
she was then in.

Taking an unfair advantage of another's weakness of mind is
undue influence, and the law will not permit the retention of an
advantage thus obtained.    (Civ. Code, § 1575.)

Under the circumstances which existed at the time of the
signing of these instruments, the plaintiff would naturally be un-
fitted for the transaction of business of that nature, and the fact
of her signing them without consideration tends very strongly
to show that her condition was such as she alleges it to have
been.

In *Kempson* v. *Ashbee*, 10 Law R. Ch. App. Cases, 15, two
bonds, signed by a woman as security for her step-father, were
set aside, on the grounds that she received no consideration,
could not have understood the nature of the transaction, and
had no independent advice, and that her income was so small
that she imperiled her entire means of support for three years
by becoming such security.    There was no allegation of weak-
ness of mind, and yet the Lord Chancellor asks : " Is it possible
that this court will permit such a security to be enforced ? "

And Sir H. M. James, L. J., in a concurring opinion, says :

"The principle is very simple. This Court has endeavored to prevent persons subject to influence from being induced to enter into transactions without independent advice."

In *Allore* v. *Jewell* (94 U. S. 506), Field, J., delivering the opinion of the Court, says: "It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that, from her sickness and infirmities, she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances, imposition or undue influence will be inferred." And after quoting from the opinions of Mr. Justice Storey, in *Harding* v. *Wheaton*, 2 Mason, 378, and Chief Justice Marshall, in *Harding* v. *Handy*, 11 Wheaton, 125, he continues as follows: "The same doctrine is announced in adjudged cases, almost without number; and it may be stated as settled law, that whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside."

That the case now before us is within the principle upon which the cases above cited were decided, we do not doubt; nor do we doubt that the doctrine of those cases is as well established as any doctrine can be.

Judgment reversed, with directions to the Superior Court to overrule the demurrer to plaintiff's complaint, with leave to the defendants to answer within ten days after being notified of the overruling of said demurrer.

Myrick, J., and Morrison, C. J., concurred